IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LIZABETH ANN BROWN, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> COTTONWOOD FINANCIAL TEXAS, § <br> LLC, § <br> § <br> *Defendant*. § | Case No. 2:17-cv-00461-RSP |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination case in which Plaintiff Lizabeth Ann Brown alleges that Cottonwood Financial Texas, LLC ("Cottonwood") terminated her employment in violation of the Age Discrimination in Employment Act (ADEA) and Title VII. Ms. Brown also alleges that Cottonwood violated the Equal Pay Act and retaliated against her for complaining about Cottonwood's allegedly discriminatory practices. Cottonwood moves for summary judgment on each of Ms. Brown's claims. Dkt. No. 28. Cottonwood's motion is granted-in-part and denied-in-part for the following reasons.

## BACKGROUND

Cottonwood owns and operates a number of payday loan stores, known as the Cash Stores. *See* Ward Decl. ¶ 3, Dkt. No. 28-1 at APP. 3. Each store is typically staffed with a full-time store manager and one or more full-time assistant store managers. *Id.* Stores within a certain geographic region constitute a district, which is supervised by a district manager. *Id.* Districts in turn form a region supervised by a regional manager. *Id.* Regions form an area, which is supervised by an area manager, and multiple areas form a territory, supervised by a territory manager. *Id.* Managers at each level report up within the chain of command. *Id.* ¶ 4.

1

Ms. Brown started working for Cottonwood in June of 2010 as an assistant store manager at a Cash Store located in Longview, Texas. Brown Dep. at 13:16-20, Dkt. No. 39-1. Ms. Brown later became a district manager and then regional manager, which was the position she held when Cottonwood terminated her employment in June of 2015. *Id.* at 16:11-17, 17:22-18:2. While employed as a regional manager, Ms. Brown was supervised by Rebecca Pierce (now Rebecca Ward), her area manager. Ward Decl. ¶¶ 5-6, Dkt. No. 28-1 at APP. 4. Ms. Ward contends that she documented a number of issues with Ms. Brown's performance as a regional manager, including her tendency to micro-manage, rather than coach, district managers. *Id.* ¶¶ 7-11; Crooks Dep. at 40:18-41:23, Dkt. No. 28-1 at APP. 85-86. Ms. Ward eventually recommended that Ms. Brown be discharged, and this recommendation was accepted by the territory manager in June of 2015. Ward Decl. ¶ 12-14, Dkt. No. 28-1 at APP. 5-6. Ms. Brown was 62 years old when her employment was terminated. Crooks Dep. at 56:1-4, Dkt. No. 39-2.

Prior to Ms. Brown's termination, in January of 2015, Ms. Brown complained to Ms. Ward about the large pay disparity between herself and Damien Carrasco, subordinate district manager. Brown Dep. at 49:23-50:13, Dkt. No. 28-1 at APP. 54-55. Ms. Brown questioned why Mr. Carrasco was making more than her and the other female managers, despite being in a subordinate position. *Id.* Ms. Ward became angry and told Ms. Brown that the disparity was a result of Mr. Carrasco's prior position at Financial Service Centers of Texas, a company that Cottonwood had acquired in 2013. *See id.* Following Ms. Brown's termination, Mr. Carrasco filled her position as regional manager. Crooks Dep. at 43:5-8, Dkt. No. 39-2. Mr. Carrasco was under 40 years old at the time. *Id.* at 43:5-8.

On May 31, 2017, after exhausting administrative remedies, Ms. Brown filed a lawsuit against Cottonwood. Compl., Dkt. No. 1. Ms. Brown's complaint alleges violations of the ADEA,

Title VII, and the Equal Act. *See id.* Cottonwood moves for summary judgment on each of Ms. Brown's claims. *See* Dkt. No. 28.

**DISCUSSION**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must consider evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012). The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a party has made that showing, the non-moving party bears the burden of establishing otherwise. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 323). The non-moving party cannot "rest upon mere allegations or denials" in the pleadings, but "must set forth specific facts showing there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 248. Thus, summary judgment "is appropriate if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

I. **Age Discrimination Claim**

The Age Discrimination in Employment Act (ADEA) prohibits an employer from discharging an employee because of the employee's age. *See* 29 U.S.C. § 623(a)(1). Because there is rarely direct evidence of discrimination, ADEA claims typically rely on circumstantial evidence

evaluated under the burden-shifting framework articulated in *McDonnell Douglas* for Title VII claims of employment discrimination. *See Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1504-05 (5th Cir.1988) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of discharge; and (4) she was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of her age. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015).

The first three elements for a prima facie case of age discrimination are not disputed. The parties agree that Cottonwood terminated Ms. Brown's employment in June of 2015, and there is no dispute that Ms. Brown was qualified for her position. *See* Ward Decl. ¶ 14, Dkt. No. 28-1 at APP. 6; Resp. Br. at 6, Dkt. No. 39. Ms. Brown was 62 years old at the time of her termination. *See* Cook Dep. 56:1-4, Dkt. No. 39-2. Ms. Brown was therefore within the protected class at the time of her discharge. *See* 29 U.S.C. § 631(a) (protecting individuals "who are at least 40 years of age").

Cottonwood mistakenly argues that for a prima facie case of age discrimination, Ms. Brown must "identify a similarly situated male employee or younger employee who received preferential treatment under nearly identical circumstances." *See* Mot. at 8-9, Dkt. No. 28. However, there is no dispute that Mr. Carrasco was under 40 years old when he replaced Ms. Brown, *see* Cook Decl. 43:5-8, Dkt. No. 39-2, which is sufficient to establish the last prima facie element, a point that Cottonwood appears to concede in its reply, *see* Reply Br. at 2 n.1, Dkt. No. 48.

4

If a plaintiff makes out a prima facie case of age discrimination, as Ms. Brown has done here, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *See Goudeau*, 793 F.3d at 474. Cottonwood has produced evidence that Ms. Brown was terminated because of her poor job performance, which is sufficient to meet the requisite burden of production. *See, e.g.*, *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) ("Respondent met this burden by offering admissible evidence sufficient for the trier of fact to conclude that petitioner was fired because of his failure to maintain accurate attendance records."). Thus, the presumption raised by Ms. Brown's prima facie case has been "rebutted and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 & n. 10 (1981) (quotation marks omitted)).

Consequently, to overcome summary judgment, Ms. Brown must show that a reasonable jury could conclude that Cottonwood's "proffered reason was not the true reason for the employment decision." *See Hicks*, 509 U.S. at 508 (1993) (quoting *Burdine*, 450 U.S. at 256)). An employee such as Ms. Brown can show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Squyres v. Heico Companies, LLC*, 782 F.3d 224, 231 (5th Cir. 2015) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)). Ultimately, Ms. Brown has the burden at trial to prove by a preponderance of the evidence that age was a "but-for" cause of Cottonwood's adverse employment decision. *See id.*

Ms. Brown's response states that the "CEO of Cottonwood observed Plaintiff's job performance in 2014 and observed no problems." Resp. Br. at 4 (citing Crooks Dep. at 11:8-14:11, Dkt. No. 39-2). Ms. Brown points to two facts to raise a triable issue regarding pretext—first, that Ms. Brown received a pay raise five months before her termination, and second, that Cottonwood

allegedly failed to warn Ms. Brown or document Ms. Brown's poor work performance prior to her termination. *See* Resp. at 10, Dkt. No. 39. The inference that could be drawn from the first fact, construed in a light most favorable to Ms. Brown, is that Ms. Brown was performing fine at work, as was evident from her pay raise.

The second fact offered to preclude summary judgment is that Cottonwood never warned Ms. Brown or documented Ms. Brown's poor work performance. *See* Resp. Br. at 10, Dkt. No. 39. The inference that could presumably be drawn from this fact, construed liberally in Ms. Brown's favor, is that because there was no record of the poor performance, Ms. Brown was in fact not performing poorly, or at least this was not the real reason for her termination.

Ms. Brown testified that as she was interviewing a retired male for an assistant manager position, her area manager, Stacey Davis, told her that "it's not a good idea to hire people of retirement age." Brown Dep. at 34:25-35:12, Dkt. No. 39-1. This statement is competent summary judgment evidence, even if Ms. Davis did not have ultimate decision-making authority, because Ms. Davis's statement was made on the job and could have influenced a personnel decision. *See, e.g.*, *Cross v. Sbarro Am., Inc.*, No. 1:09-CV-275, 2011 WL 572415, at *14 n.9 (E.D. Tenn. Feb. 15, 2011). Ms. Davis's alleged comment is therefore at least circumstantial evidence of discrimination. *See id.*

In addition, Ms. Brown testified that the first time her area manager expressed any concerns with her performance was after she complained that Mr. Carrasco was making more than her. *See id.* at 134:3-16, Dkt. No. 39-1. This suggests that Ms. Ward's accounts of extensive documentation and counseling prior to that time are false, and hence there is a factual dispute for the jury to resolve. Moreoever, the testimony raises an inference that Cottonwood's proffered reason for

allegedly failed to warn Ms. Brown or document Ms. Brown's poor work performance prior to her termination. *See* Resp. at 10, Dkt. No. 39. The inference that could be drawn from the first fact, construed in a light most favorable to Ms. Brown, is that Ms. Brown was performing fine at work, as was evident from her pay raise.

The second fact offered to preclude summary judgment is that Cottonwood never warned Ms. Brown or documented Ms. Brown's poor work performance. *See* Resp. Br. at 10, Dkt. No. 39. The inference that could presumably be drawn from this fact, construed liberally in Ms. Brown's favor, is that because there was no record of the poor performance, Ms. Brown was in fact not performing poorly, or at least this was not the real reason for her termination.

Ms. Brown testified that as she was interviewing a retired male for an assistant manager position, her area manager, Stacey Davis, told her that "it's not a good idea to hire people of retirement age." Brown Dep. at 34:25-35:12, Dkt. No. 39-1. This statement is competent summary judgment evidence, even if Ms. Davis did not have ultimate decision-making authority, because Ms. Davis's statement was made on the job and could have influenced a personnel decision. *See, e.g.*, *Cross v. Sbarro Am., Inc.*, No. 1:09-CV-275, 2011 WL 572415, at *14 n.9 (E.D. Tenn. Feb. 15, 2011). Ms. Davis's alleged comment is therefore at least circumstantial evidence of discrimination. *See id.*

In addition, Ms. Brown testified that the first time her area manager expressed any concerns with her performance was after she complained that Mr. Carrasco was making more than her. *See id.* at 134:3-16, Dkt. No. 39-1. This suggests that Ms. Ward's accounts of extensive documentation and counseling prior to that time are false, and hence there is a factual dispute for the jury to resolve. Moreoever, the testimony raises an inference that Cottonwood's proffered reason for

Ms. Brown's termination was pretext for discrimination. Accordingly, a factual dispute precludes summary judgment on Ms. Brown's age discrimination claim.

**II.     Sex Discrimination Claim**

Title VII prohibits discrimination "because of" a protected characteristic, including sex. 42 U.S.C. § 2000e-2(a)(1). As with ADEA claims, a sex discrimination claim requires the plaintiff to first demonstrate a prima facie case, and then the burden of production shifts to the defendant to offer a legitimate, nondiscriminatory reason for its action. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016). If the employer satisfies this burden, "the presumption of discrimination disappears." *Id.* (quoting *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)). The plaintiff must then "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Id.* (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)).

To establish a prima facie case, Ms. Brown must provide evidence that she (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of a disparate treatment claim, shows that others similarly situated were treated more favorably. *Id.* As with Ms. Brown's ADEA claim, she has satisfied her prima facie burden to raise an inference of sex discrimination.

There is also evidence in the record that raises a triable issue of fact concerning Cottonwood's proffered reason for her termination. Cottonwood emphasizes that Ms. Brown was discharged because of her poor work performance. *See* Dkt. No. 28 at 9-11. For the same reasons

discussed above, there are genuine disputes of material fact precluding summary judgment on Ms. Brown's sex discrimination claim.

## III.     Equal Pay Act Claim

The Equal Pay Act prohibits employers from discriminating "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). In other words, the Act demands "that equal wages reward equal work." *Siler-Khodr v. Univ. of Texas Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001). To establish a prima facie case under the Equal Pay Act, a plaintiff must show that (1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as an employee of the opposite sex; and (3) she was paid less than the employee of the opposite sex providing the basis for comparison. *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). Once a plaintiff has made a prima facie case by showing that an employer compensates differently for equal work, the burden shifts to the employer to "prove by a preponderance of the evidence that the wage differential is justified under one of the four affirmative defenses set forth in the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Siler-Khodr*, 261 F.3d at 546.

While there is no dispute that Cottonwood is subject to the Equal Pay Act and that Ms. Brown was paid less than Mr. Carrasco, her subordinate, Ms. Brown has not shown that Mr. Carrasco's position was comparable to her position. Ms. Brown was a regional manager who supervised district managers such as Mr. Carrasco. *See* Ward Decl. ¶ 3, Dkt. No. 38-1 at APP. 3. The responsibilities of regional managers and district managers differ significantly. District

8

managers such as Mr. Carrasco were responsible for store operations whereas regional managers such as Ms. Brown were responsible for overseeing district managers. Brown Dep. at 18:3-10, Dkt. No. 28-1 at APP. 47. Although Ms. Brown may have had more responsibility than Mr. Carrasco, employees that are subordinate to a plaintiff pursuing an Equal Pay Act claim are not typically suitable comparisons because they are not "similarly situated." *See, e.g.*, *Bry Singleton v. Autozoners LLC*, No. 8:12-CV-2641-T-30, 2013 WL 5954781, at *2-*3 (M.D. Fla. Nov. 7, 2013). Ms. Brown has therefore failed to establish a prima facie case under the Equal Pay Act.

Even if Mr. Carrasco could be considered similarly situated to Ms. Brown, Cottonwood has explained the pay disparity by coming forward with evidence that Mr. Carrasco was paid more than Ms. Brown because of the seniority system of Financial Service Centers of Texas ("FSC"). When Cottonwood acquired FSC, all newly acquired employees such as Mr. Carrasco retained the pay level they had acquired with FSC, which was significantly higher than Cottonwood's pay levels for similar jobs. *See* Crooks Decl. ¶ 11, Dkt. No. 28-1 at APP. 38-39, APP. 38-41. Ms. Brown, like all other Cottonwood managers, was therefore paid substantially less than former FSC managers such as Mr. Carrasco and the other former FSC regional and district managers, who included five women and one man. Crooks Decl. ¶¶ 9-10, Dkt. No. 28-1 at APP. 38. Even Ms. Brown appears to concede that the reason for the pay disparity was unrelated to sex. *See* Resp. Br. at 9, Dkt. No. 39 ("While the reason for the pay disparity may lie in a reason unrelated [to] gender, this does not insulate Defendant from liability for retaliating against Brown for complaining about the pay disparity."). Accordingly, summary judgment must be granted on Ms. Brown's Equal Pay Act claim. *See, e.g.*, *Meisner v. State of Texas*, 252 F.3d 435 (5th Cir. 2001).

## IV. Retaliation Claims

In addition to the discrimination and pay disparity claims, Ms. Brown also alleges that Cottonwood terminated her employment because she complained about Cottonwood's allegedly discriminatory practices. *See* Compl. ¶¶ 18-32, Dkt. No. 1. The ADEA, Title VII, and the Equal Pay Act each prohibit an employer from retaliating against an employee who opposes a discriminatory practice prohibited by the statute. *See* 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 2000e-3(a) (Title VII); 29 U.S.C. § 215(a)(3) (Equal Pay Act). To establish a prima facie case of retaliation under these statutes, a plaintiff must show that (1) she engaged in a protected activity; (2) there was an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496-97 (5th Cir. 2015) (ADEA); *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017) (Title VII); *Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 F. App'x 280, 285 (5th Cir. 2014) (Equal Pay Act).

There is no dispute that Ms. Brown was terminated by Cottonwood, and thus Ms. Brown has established that she suffered an adverse employment action. A plaintiff's opposition to a prohibited practice can take many forms, *see Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009), and Ms. Brown has met her burden of showing that she engaged in a protected activity.

To show a causal link between the protected activity and her termination. Ms. Brown again points to her pre-termination pay raise and Cottonwood's alleged lack of documentation concerning Ms. Brown's poor performance, *see* Resp. Br. at 9-10, Dkt. No. 39. Ms. Brown also argues that because the person who discharged her was the same person to whom she complained, there is a triable issue concerning causation. *See id.* at 9.

Ms. Brown also emphasizes "[t]he temporal proximity of Brown's termination and her complaints of wage disparity." Resp. Br. at 10, Dkt. No. 39. There is no dispute that Ms. Brown was discharged less than five months after she complained about the pay disparity. *See* Resp. Br. at 4-5, Dkt. No. 39; Reply Br. at 9-10, Dkt. No. 48. The Supreme Court has held that even "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action" is sufficient to establish a prima facie case of causation when the temporal proximity is "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Ms. Brown's deposition testimony also creates a factual dispute regarding her retaliation claims for the reasons already explained. Namely, Ms. Brown testified that she never heard a single complaint about her poor work performance until after she complained about the pay disparity. *See id.* at 134:3-16, Dkt. No. 39-1. This at least gives rise to an inference that Cottonwood began developing a record regarding Ms. Brown's poor performance only after she complained about a prohibited practice, which ultimately culminated in Ms. Brown's discharge. A triable issue regarding causation has therefore been established. Accordingly, summary judgment on Ms. Brown's retaliation claims must be denied.

## CONCLUSION

Ms. Brown has not raised a triable issue regarding her pay disparity claim under the Equal Pay Act. Accordingly, partial summary judgment on that claim is granted. Ms. Brown has, however, raised a triable issue regarding her discrimination claims under the ADEA and Title VII and her retaliation claims under the ADEA, Title VII, and the Equal Pay Act. Accordingly,

Cottonwood's motion for summary judgment, Dkt. No. 28, is granted-in-part and denied-in-part to that extent.

**SIGNED this 8th day of March, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE